IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LEE ARTERS t/a GREENDALE BUILDERS : | CIVIL ACTION - LAW |
| Plaintiff, : | |
| v. : | No. 02-CV-4388 |
| ZURICH AMERICAN INSURANCE CO. t/a, : ZURICH NORTH AMERICA as successor in : Interest to ASSURANCE CO. OF AMERICA, et al. : | JURY OF TWELVE (12) DEMANDED |
| Defendants. : | |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS CLAIMED BY DEFENDANT TO BE PRIVILEGED**

This is an action in declaratory judgment filed on July 2, 2002. Its necessity was mandated when Defendant refused to provide a defense and/or indemnity to Greendale when Greendale was sued in the Court of Common Pleas of Delaware County at number 01-8144 sub nom Thomas Gorman v. REI Consultants, Greendale Builders and Lee Arters and Sarah Arters. (The State Court action).

The State Court complaint is attached to the complaint in the Declaratory Judgment Action and reveals that Mr. Gorman, a person under the age of eighteen, injured his hand while performing carpentry work wherein a table power saw cut through the his left hand and middle finger causing serious and permanent injuries. The State Court Complaint provides no allegation that Mr. Gorman was an employee of Greendale or Mr. and Mrs. Arters; indeed, no workers' compensation claim had been filed on behalf of Mr. Gorman, an exclusive remedy available to an employee injured in the scope of his employment. Mr. Gorman was an award-winning

carpentry student having won first place in a Commonwealth of Pennsylvania competition and 6th place on a national basis. Mr. Gorman was injured on or about July 29, 1999 (paragraph 20 of the State Court Complaint) and filed his complaint in the State Court on July 20, 2001.

The effective date of Plaintiff's commercial general liability policy was from January 19, 1999 to January 19, 2000, and was an "occurrence" policy.

Greendale was contacted in January 2001 by an attorney representing Mr. Gorman. Greendale thereupon notified Zurich of a potential claim, Greendale's belief being that Mr. Gorman's status at the time of his injury was that of an independent contractor since Mr. Gorman, when paid, did not have taxes withheld, and was paid by personal checks and cash, kept his own hours and merely presented a bill at the end of the workweek. Prior to the time the work commenced, Zurich determined that Mr. Gorman presented a "business card" to Greendale identifying himself as "Gorman General Contracting".

On or about October 10, 2001 Zurich/Assurance denied coverage and a defense to Greendale having concluded unilaterally that the relationship between Mr. Gorman and Greendale was that of an employer/employee and therefore, excluded under the terms of the policy.

The disclaimer of October 10th (Exhibit E) was justified by Zurich on the basis that "all of Mr. Gorman's allegations pertained to his employment". In fact, the allegations of the State Court Complaint related to Mr. Gorman's work, but not to a relationship of employer and employee.

Defendant claimed initially that virtually every communication regarding its decision was privileged. See Exhibit "A", the initial privilege log. After some negotiation, Defendant revised its claim of privilege and produced some, but not all of the documents. An inspection of those

2

produced revealed very clearly that Defendant never intended to cover this claim and began immediately to look for reasons to deny it. After initially finding a confirmation of coverage and no issues of coverage "at this time" (Document ACOA 158, January 24, 2000), the documents thereafter reveal that it attempted to disclaim on the basis that Mr. Gorman could be considered a statutory employee (Document ACOA 172); whether or not it could rely on the absence of "an occurrence" (Document ACOA 189) but finally concluded unilaterally that "there is an argument to make that the insured had control over the work (Document ACOA 173), which the Plaintiff did and therefore, he <u>would be</u> considered an employee". This statement is followed by a statement "I am forwarding the statement to HO[1] Legal to obtain their opinion whether to disclaim or handle under ROR[2]. I believe we have enough to disclaim". (Document ACOA 173). These statements appear in Zurich's notes dated May 22, 2001. The Complaint was not filed until July 20, 2001. Documents 158, 172, 173 and 189 are attached as Exhibit F.

In Defendant's request to obtain home office legal authority to "either disclaim or defend under a reservation of rights", there was no third alternative mentioned whether to <u>provide</u> coverage to its insured.

This course of action was clearly contrary to the law of Pennsylvania. In <u>Bibrocsh v. TransAmerica Insurance Company</u>, 603 A.2d 1050 (Pa. Superior) 1992 cited with approval in <u>Green Machine Corp. v. Zurich American Insurance Company</u>, 313 F.3d 837 (C83, 2002);

> "The duty to defend is different from and greater than the duty to indemnify. If the factual allegations of the complaint against the insured state a claim which would *potentially* fall within the coverage of the policy, then the insurer has the duty to defend. *See D'Auria v. Zurich Ins. Co.,* 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) (citing, *inter alia, Pacific Indem. Co. v. Linn,*

---

[1] Home office.
[2] Reservation of rights.

3

> 590 F.Supp. 643 (E.D.Pa.1984), *aff'd*, 766 F.2d 754 (3d Cir.1985)). As the Supreme Court has stated, "[I]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." *Springfield Twp. V. Indemnity Ins. Co. of North America,* 361 Pa. 461, 464, 64 A.2d 761 (1949). In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. *Cadwallader v. New Amsterdam Casualty Co.,* 396 Pa. 582, 152 A.2d 484 (1959).
>
> Thus, we must look to two sources to decide whether a duty to defend exists. We must interpret the insurance policy to determine the scope of coverage. Then, we must analyze the complaint filed against the insured to ***510** determine whether the claims asserted potentially falls within that coverage. *Id.; see also Seaboard Industries, Inc. v. Monaco,* 258 Pa.Super. 170, 392 A.2d 738 (1978)".)

Thus, Zurich made its determination to disclaim even before the Complaint was filed and failed to give credence to any set of facts, which could potentially fall within the coverage of the policy. Indeed, it negated every such potentiality. Not only did it violate <u>that</u> duty, but also its duty of liberal construction and resolution of all doubts in favor of the <u>insured</u> rather than itself. At the time it made its conclusion, it was working on an investigation that it conducted, but even after the Complaint was filed it refused a request to reconsider its position, having ascertained that its position on coverage was "in order" (179); "is established" (181) "is on point and unchanged" (184); "appears appropriate" (194). Exhibit G hereto.

No consideration was ever given to its duty at any time to construe the allegations of the Complaint as true, to liberally construe them, and to resolve all issues in favor of its insured.

There was no doubt, then, as to why it has refused to produce the documents now identified in its enhanced privilege log as well as those identified in the redacted documents.

4

**I.     WAIVER**

In the absence of a claim of privilege made within thirty (30) days, a party waives its right to claim it. Keystone Medical Corporation v. Rossner, 1987 W.L. 6015 (Ed. Pa.) citing Davis v. Romney, 53 FRD 247 (Ed. Pa. 1971). The Waiver extends to matters claimed as privileged. Keystone, Supra. citing Baxter v. Vick, 25 FRD 229 (Ed. Pa. 1960).

Plaintiff acquiesced to every request of Defendant for an extension of time to answer Plaintiff's request for production. Defendant requested an extension of four months to file his answers. No request was ever made also to file objections. Therefore, Plaintiff was surprised at the end of four months that the answers included the claim of privilege. The law simply does not support such a tardy claim especially under the circumstances set forth above where it is clear from the outset that the mindset of the Defendant insurance carrier was to violate the duties that it owed to its insured.

**II.    JUSTIFICATION VIA ADVICE OF COUNSEL**

Notwithstanding the tardy claim of privilege, Defendants have attempted to justify its privilege claim by relying upon the advice of counsel. As has been demonstrated above, the "advice of counsel" was sought merely to justify what the claims processors had already determined even before the Complaint was filed. The call to legal was made in the nature of an emergency for the rooster to guard the henhouse.

After the Complaint was filed, Defendant was requested to reconsider its position and to provide coverage. It continued its careless disregard of its duty towards the Plaintiff by sending the disclaimer letter of October 10, 2001. See Exhibit E.

On September 18, 2001 the home office legal provided the justification to the claims processors on the basis that Mr. Gorman "would have been considered" an employee of the insured. (Document ACOA 177). Exhibit H. Consistently, these comments and conclusion are contrary to the insurance company's duty to construe the terms of the Complaint as true, to construe them liberally, and to resolve all conflicts in <u>favor</u> of the insured.

Thereafter, Greendale instituted the present litigation for declaratory judgment, for breach of contract, and good faith, bad faith, and unjust enrichment. In defense of those counts, Defendants have put in issue the bona fides of the legal opinions. (See paragraph 57 of Zurich's answer to the Complaint, and in its first, second, fourth, seventh, eighth, ninth and tenth affirmative defenses alleging by various semantics that its "analysis" was fair and reasonable; that it acted fairly and reasonably in connection with his investigation and evaluation; that it acted properly and in good faith and that it <u>did not</u> act in disregard to the rights of the insured.

In so asserting, the Defendants have the burden of proof. In order to meet it, they will have to introduce those opinions into evidence.

This issue has been decided in <u>Rohne-Poulenc v. The Home Indemnity v. Zurich International, et. al.</u>, 32 F.3d 851 (3rd Cir. 1994). That court stated at p. 863; "a Defendant may also waive the privilege by asserting reliance on the advice of counsel as an affirmative defense." <u>Chevron Corp. v. Pennzoil Company</u>, 974 F.2d 1156 (9th Cir. 1992)(the parties' claim that its tax position was reasonable because it was based on the advice of counsel puts advice in issue and waives privilege.); see also <u>Hunt v. Blackborn</u>, 128 U.S. at 470, 9 S.Ct. at 127, (client waives privilege when she alleges as a defense that she was misled by counsel). See generally, <u>E. Cleary</u>, <u>McCormick</u> on evidence, Section 93 at 343 (3rd Ed. 1984). "In an action for patent

6

infringement, where a party is accused of acting willfully, and where that party asserts as an essential element of its defense that it relied upon the advice of counsel, the party waives the privilege regarding communications pertaining to that advice.  <u>Mellon v. Beecham Group PLC</u>, 17 U.S.P.Q.2d 1149, 1151, 1991 WL 16494 (D.N.J. 1991); see also, e.g., <u>W.L. Gore & Associates, Inc. v. Tetratec Corp.</u>, 15 U.S.P.Q.2d 1048, 1051, 1989 WL 144178 (E.D. Pa. 1989) (client waived privilege by asserting reliance upon advice of counsel as an essential element of his defense).

"In these cases", said the 3rd Circuit, "the client has made the decision and taken the affirmative step in the litigation to place the advice of the attorney in issue.  Courts have found that by placing the advice in issue, the client has opened to examination facts relating to that advice.  Advice is not in issue merely because it is relevant, and does not necessarily become in issue merely because the attorney's advice might affect the client's state of mind in a relevant manner.  The advice of counsel is placed in issue where the client asserts a claim or defense, and attempts to prove that claim or defense by disclosing or describing an attorney client communication."  <u>North River Insurance Company v. Philadelphia Reinsurance Corporation</u>, 797 F.Supp. 363, 370 (D.N.J. 1992); <u>Pittston Company v. Allianz Insurance Co.</u>, 143 F.R.D. 66, 71 (D.N.J. 1992).

"Thus, in a patent suit, where an infringer is alleged to have acted willfully, the advice of the infringer's lawyer may be relevant to the question of whether the infringer acted with a willful state of mind …." Id. @ 863.

In fact, in May of 2003, Magistrate Judge Hart of the E.D.Pa. ruled in a patent infringement case that "claim interpretations are not protected by attorney-client privilege, nor

are they attorney work product since Plaintiffs will have to disclose them to prove their case. S.S. White Burs, Inc. et. al v. Neo-Flo, Inc. Pics No. 030657, citing New L&N Sales and Marketing, Inc. v. Big M., Inc., 2001 WL 111613 (E.D.Pa. Feb. 1, 2001). The rationale applied therein was that the claims identified in the patent can be compared to the device allegedly which infringes them. Where a party uses counsel to interpret the claims in justification of its position, the advice of counsel is not protected since it becomes an element of proof for that party in meeting his burden.

We see no substantial difference where counsel interprets a claim of a patent as compared to counsel interpreting an exclusion in an insurance policy. To defend against the Plaintiff's claims in the case at bar, the opinions of counsel will constitute an element of Defendant's proof, and Plaintiff is entitled to know it beforehand.

The documents sought to be disclosed are identified in Exhibit "C" herein, Defendant's "enhanced" privilege log, as well as those where partial disclosure is made and the remainder redacted. These documents are not described with sufficient specificity to enable counsel to evaluate the bona fides of the privilege asserted. A large portion thereof are simply "z notes" which are nothing more than notes to the claim file, a series of e-mails and a series of letters. However, since there is reasonable certitude that these will relate either to the initial conclusions to disclaim or the opinions later obtained, both before and after the Complaint was filed, and since these will of necessity constitute the defense of reasonableness and lack of bad faith, they must be produced.

### III.   CONCLUSION

Plaintiff believes that it has made out a case of waiver of privileges by its untimely assertion, or in the alternative that the documents claimed as privileged must be produced

because Defendant has put in issue the bona fides of its decision ostensibly justified by the opinions of counsel.

Respectfully Submitted:

**VAUGHAN, DUFFY & CONNORS, LLP**

By: _____
Francis X. Nolan, Esquire, I.D. 09237
Vaughan, Duffy & Connors, LLP
102 Pickering Way, Suite 400
Exton, PA 19341
(610) 524-2100

Date: May 29, 2003