## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE ARTERS t/a GREENDALE BUILDERS | : | CIVIL ACTION - LAW |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | No. 02-CV-4388 |
| ZURICH AMERICAN INSURANCE CO. t/a, | : | |
| ZURICH NORTH AMERICA as successor in | : | |
| Interest to ASSURANCE CO. OF AMERICA, et al. | : | JURY OF TWELVE (12) |
| | : | DEMANDED |
| | : | |
| Defendants. | : | |

## PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT SUR DECLARATORY JUDGMENT ACTION

AND NOW COMES the Plaintiff and respectfully moves the court to enter an Order granting Partial Summary Judgment Sur the Declaratory Judgment action and sets forth in support thereof the following:

1.      Plaintiff, Lee Arters, is an adult individual who trades under the business designation Greendale Builders and has a business address located at P.O. Box 216, Media, PA   19063.   (Lee Arters and Greendale Builders are hereinafter collectively referred to as "Greendale")

2.      Greendale has engaged in the business of residential construction.

3.      Defendant, Assurance, is, upon information and belief, a corporation organized and existing under the laws of the State of New York with a principal place of business located at One Liberty Plaza, 165 Broadway, 53rd Floor, New York, NY  10006.

4.      Assurance is engaged in the business of providing commercial, property, and casualty insurance and is duly licensed by the Commonwealth of Pennsylvania to provide such coverage in Pennsylvania.

5.      This Honorable Court has diversity jurisdiction pursuant to 28 U.S.C. § 1332 as this action involves citizens of different states and the amount in controversy exceeds $75,000.00 exclusive of interest and costs.

6.      Venue is appropriate in this judicial district pursuant to 28 U.S.C. § 1391(a)(2) and (3) since a substantial part of the transactions and occurrences giving rise to the claims asserted herein occurred in this judicial district and the Defendants are corporations which are subject to personal jurisdiction in this judicial district.

7.      On or before January 19, 1999, Greendale and Assurance entered into a valid and binding insurance contract reflected in a Commercial General Liability Policy No. SCP34746363 (the "Policy") a copy of which is attached hereto and made part hereof as Exhibit "A".

8.      The effective period of the Policy was January 19, 1999 through January 19, 2000.

9.      Pursuant to Section I of the Policy, Assurance obligated itself to Greendale as follows:

> A.      We will pay those sums the insured becomes legally obligated to pay as damages because as "bodily injury" or "property damage" to which the insurance applies.  We will have the right and duty to defend any "suit" seeking those damages …

10.      In the Policy, Assurance excluded the coverage referenced above from, *inter alia*, the following:

d.      Workers' Compensation and Similar Laws

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

e.      Employer's Liability

Employer's  Bodily Injury to:

An "Employee" of the insured arising out of and in the course of:

(a)      Employment by the Insured; or

(b)      Performing duties related to the conduct of the insured's business …

11.    The term "Employee" is defined in the policy to include a "Leased Worker" but not a "Temporary Worker".

12.    The term "Temporary Worker" is defined in the Policy as "a person who is furnished … to substitute for a permanent 'Employee' on leave or to meet short term workload conditions."

13.    In or around July 1999, Greendale was contracted as the  general contractor and primary builder of a residential dwelling unit located at 1776 Ridley Creek Road in Media, PA (the "Construction Project").

14.    Due to the construction demands associated with the Construction Project, Greendale was required to seek short-term assistance limited to the Construction Project.

15.    For this purpose, Greendale contacted a vocational school and enlisted the assistance of an individual by the name of Thomas Gorman, an independent contractor, who identified himself as working for Gorman General Contracting.

16.    Gorman was enlisted by Greendale to perform work on the Construction Project on a temporary, "time and material" basis.

17.    Gorman submitted invoices to Greendale for the work performed.

18.    On or about July 9, 1999, Gorman was injured while operating a power saw on the Construction Project (the "Injury").

19.    On July 20, 2001, Gorman filed a Complaint in the Court of Common Pleas of Delaware County, Pennsylvania to recover damages for the Injury against Greendale, Lee Arters, Sara Arters, and R.E.I. Consultants, Ltd. (the "Gorman Complaint"). A true and correct copy of the Gorman Complaint is attached hereto and incorporated herein by reference as Exhibit "B".

20.    In the Gorman Complaint, Gorman alleges, *inter alia,* that he was contacted by Greendale to perform certain labor services on the Construction Project and in performing work on the Project, he suffered the Injury.

21.    The Gorman Complaint does not allege that Gorman was an employee of Greendale at the time of the injury.

22.    Gorman did not file any claims for workers' compensation benefits.

23.    Greendale paid all premiums that were required under the terms of the CGL Policy and the Policy was in effect at the time of the Injury.

24.    As the insurer, Zurich/Assurance agreed to defend Greendale against any suits arising under the terms of Policy, even if such suits were groundless, false, or fraudulent.

25.    On October 10, 2001, Zurich/Assurance issued a rejection letter to Greendale informing Greendale that coverage was not available under the Policy for the

allegations of the Gorman Complaint. A copy of the letter is attached hereto and made part hereof as Exhibit "C".

26.    For coverage purposes, the allegations of the underlying Complaint must be taken as true and liberally construed in favor of the insured.

27.    If the factual allegations of the underlying Complaint against the insured state a claim which would <u>potentially</u> fall within the coverage of the Policy, the insurer has the duty to defend.

28.    The Gorman Complaint, as drafted, potentially falls within the coverage provisions of the insurance policy for the following reasons:

A.    No part of the Gorman Complaint alleges that Mr. Gorman was employed as an employee.

i.    Paragraph 11 alleges only that Plaintiff was to "perform certain manual labor".

ii.    Paragraph 12 alleges only the "performance of manual labor".

iii.    Paragraph 13 alleges only the performance of "dangerous carpentry services for them".

iv.    Paragraph 14 alleges only that Defendant "obtained the services of Plaintiff".

v.    Paragraph 17 alleges only that "Defendant permitted Plaintiff to install doors, etc.".

vi.    Paragraph 20 alleges only that Plaintiff was using … the saw … "while performing services for Defendant".

       vii.    Paragraph 22 alleges only that Plaintiff was operating the saw "while performing manual labor on behalf of Defendant".

       viii.    Paragraph 24 alleges only "hiring" of a minor but does not allege that it was "as an employee or an independent contractor." Paragraph 24 further alleges that Defendants "permitted the minor to operate …"; that the minor was "allowed to use power tools"; that Defendants violated certain laws regarding "employment of the minor" (without specificity as to the capacity as an employee or independent contractor).

       ix.    Paragraph 31 alleges only that the Plaintiff was operating and performing manual labor "on behalf" of Defendants.

       x.    Paragraph 33 of the Complaint follows the allegations of Paragraph 24.

29.    The basis of the Defendants' rejection of coverage is a letter dated October 10, 2001 attached hereto as Exhibit "D" citing Exclusion 2(d) workers' compensation and similar laws; Exclusion 2(e) and 20: a temporary worker "means a person who is furnished to you to substitute for a permanent employee on leave or to meet short term workload conditions".

30.    The above declination of coverage was based in part upon the Defendants' obtaining of a statement from Mr. Arters, a copy which is attached hereto as Exhibit "E" (Bates stamped by Defendant[1] as ACOA010 through 015) wherein Mr. Arters recited (ACOA010) that he was the sole employee of Greendale Builders; that the other jobs were subcontracted out, (i.e. whatever Mr. Arters did not do himself); that Mr. Gorman,

---

[1] Defendant insurance company marked its documents "ACOAxxx".

the injured person, was a student and that he set his own hours after school and sometimes on the weekend; that Mr. Gorman would present a paper every week stating how much he was owed; that Mr. Gorman was never hired as a full time employee or any permanent basis; that Mr. Gorman received no benefits of any kind (ACOA011); that Mr. Arters was 50 to 100 yards away when Mr. Gorman injured himself; that Gorman had placed six in a United States National Carpentry Competition; that he supplied his own hand tools but the saw on which he was injured was owned by Greendale (ACOA014); Tom Gorman was never my employee (ACOA015).

31.     The insurance carrier produced internal documents which provided its justification for denial of coverage, none of which was in accordance with the law, to wit:

A.     ACOA158 dated January 24, 2001 indicating among other things "There are no coverage issues at this time".

B.     ACOA159 identifying that "the insured had maintained he (Gorman) was hired as an independent contractor and not as an employee of the insured.  The insured does not have workers' compensation coverage in effect …. If it is found the insured owed the Claimant workers' compensation benefits, we may be able to assert W/C sole remedy as a defense."

C.     ACOA162 dated January 25, 2001 "… If the CGL Policy precludes coverage for BI to employees and the insured has no W/C coverage, we could be in a disclaimer situation and before we go forward, the ROR (Reservation of Rights) should be first."

D.    ACOA167.  "Prior to issuing this disclaimer I am going to get an I/A (Independent Adjuster) to get a statement from the insured with regard to the control he has over the subject, etc.".

E.    ACOA172.  "Rep. received and reviewed the signed statement obtained by the independent in this case.  Interestingly, the Claimant, Tom Gorman, presented the insured with a business card 'Gorman General Contracting' upon the start of his work.  This is why the insured is making the argument he was hired as an independent contractor.  Mr. Gorman was apparently quite talented at what he does.  He in fact as a junior in high school won first prize in the Pennsylvania State Vo-Tech games and finished sixth in the nation …".  "The insured indicated that he did not recall what financial agreement they reached before Gorman starting working on the job.  There was no formal written contract and therefore *we are unable to* argue statutory employer."

F.    ACOA173.  "I believe there is an argument to make that the insured had control over the work which the Claimant did and therefore he would be considered an employee.  I am forwarding this statement to HO Legal to obtain their opinion regarding whether to disclaim or handle under ROR.  I believe we have enough to disclaim."

G.    ACOA175.  "The Claimant's attorney has made a demand of $850,000."

H.    ACOA177.  "I have received permission from HO to disclaim coverage on this case on the basis that the minor Plaintiff '*would have been considered an employee* of the insured'" (italics supplied).

Paragraph 31  A-H references are attached hereto as Exhibit "F".

32.     Mr. Gorman testified in his deposition, as follows:

A.      From Pages 14/15:  That there was no time clock and there was no formal system whereby Greendale tracked his hours; Mr. Gorman kept his own hours; that he would work on Saturdays and Sundays during the school year and during the week if he finished school early.

B.      From Page 14:  In so far as being supervised, Mr. Arters would show him *what* had to be done, and then Arters would leave and inspect the job when Mr. Gorman was finished.

C.      From Page 16:  That in addition to working for Mr. Arters, Mr. Gorman worked for others during the year 1999.

D.      From Page 20 :  After Mr. Arters told Mr. Gorman *what* needed to be done, Mr. Gorman decided *how* it was going to be done and how he would use the tools to reach the desired end results.  Mr. Arters did not tell Mr. Gorman *how* to do a job.

E.      From Page 21:  Mr. Gorman received no fringe benefits.

F.      From Page 121/122:  Mr. Gorman owned the hand tools which he used; during the time of this project, he used 60% of his own tools and 40% of Greendale's (power) tools.

H.      From Page 104:  Mr. Arters requested Mr. Gorman to recommend other workers, but not to be affiliated with Mr. Gorman.

I.     From Page 112:  The general pattern was that Mr. Arters walked through the site with Mr. Gorman, showed Mr. Gorman *what* had to be done, and Mr. Gorman then decided how the job would be done.

J.     From Pages 101/102:  Most of the time Mr. Gorman worked by himself, and on occasion Mr. Arters would assist him.

K.     From Page 99:  The general tenor of the way things were done is that Mr. Gorman did things "my way" to get things done to an extent, but for aesthetic purposes, things were done Mr. Arters' way.

Said depositions pages are attached as Exhibit "G".

32.    The above referenced documents demonstrate that there are no genuine issues of material fact and that at a minimum the Gorman Complaint potentially falls within the CGL coverage and that Defendants must defend this action until it clearly, appears, if at all, that facts are presented and found by a fact finder that the claim is excluded.

WHEREFORE, Plaintiff respectfully requests that the court grant Plaintiff's Partial Summary Judgment Motion on the issue of Defendant's duty to defend.

Respectfully Submitted:

**VAUGHAN, DUFFY & CONNORS, LLP**


By:     _____
        Francis X. Nolan, Esquire, I.D. No. 09237
        Attorney for Plaintiff
        102 Pickering Way, Suite 400
        Exton, PA  19341
        (610) 524-2100

Date:  September 9, 2003