IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LEE ARTERS t/a GREENDALE BUILDERS | : | CIVIL ACTION - LAW |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | No.  02-CV-4388 |
| | : | |
| ZURICH AMERICAN INSURANCE CO. t/a, ZURICH NORTH AMERICA as successor in Interest to ASSURANCE CO. OF AMERICA, et al. | : | JURY OF TWELVE (12) DEMANDED |
| | : | |
| Defendants. | : | |

**PLAINTIFF'S MEMORANDUM SUR MOTION FOR PARTIAL SUMMARY JUDGMENT**

**I.     THE STANDARD**

In Green Machine Corp. v. Zurich American Insurance Company, 313 F.3d A37 (See A3 2002) the court cited with approval Bibrosch v. Transamerican Insurance Company, 603 A.2d 1050 as follows:

> "The duty to defend is different from and greater than the duty to indemnify. If the factual allegations of the complaint against the insured state a claim which would *potentially* fall within the coverage of the policy, then the insurer has the duty to defend. See D'Auria v. Zurich Ins. Co., 352 Pa.Super. 231, 507 A.2d 857, 859 (1986) citing, inter alia, Pacific Indem. Co. v. Linn, 590 F.Supp. 643 (E.D.Pa. 1984), aff'd, 766 F.2d 754 (3d Cir. 1985)). As the Supreme Court has stated, "[i]t is not the actual details of the injury, but the nature of the claim which determines whether the insurer is required to defend." Springfield Twp. v. Indemnity Ins. Co. of North America, 361 Pa. 461, 464, 64 A.2d 761 (1949). In making this determination, the factual allegations of the complaint are taken to be true and the complaint is to be liberally construed with all doubts as to whether the claims may fall within the coverage of the policy to be resolved in favor of the insured. Cadwallader v. New Amsterdam Casualty Co., 396 Pa. 582, 152 A.2d 484 (1959). Thus, we must look to two sources to decide whether a duty to defend exists. We must interpret the insurance policy to determine the scope of coverage. Then, we must analyze the complaint filed against the insured to *510 determine whether the claims asserted potentially falls within that coverage. Id;

*see also* <u>Seaboard Industries, Inc. v. Monaco,</u> 258 Pa.Super. 170, 392 A.2d 738 (1978)."

In <u>Matrix Health Management, Inc. v. Western World Insurance Company, Inc.</u>, 1994 WL 378 986 (3rd Circuit Pa. 1994) that court similarly cited <u>Bibrosch</u> with approval and summarized Pennsylvania Law of follows:

> "It is well established under Pennsylvania law that an insurer must defend the third party action if the allegations of the complaint "state on their face a claim against the insured to which the policy potentially applies." <u>C.H. Heist Caribe Corp. v. American Home Assur. Co.,</u> 640 F. 2d 479, 483 (3d Cir.1981). [FN2] The factual allegations in the complaint in the underlying action control whether an insurer has a duty to defend. <u>Pacific Indem. Co. v. Linn,</u> 766 F.2d 754, 760 (3d Cir.1985); C.H. Heist, 640 F.2d at 483. If a complaint states allegations that potentially fall within the coverage provided, the insurer is obligated to defend its insured until it can confine the possibility of recovery to claims outside of the coverage of the policy. <u>Pacific Indem. Co. v. Linn,</u> 766 F.2d at 760. Moreover if some of the allegations in the complaint fall within the terms of coverage and some do not, the insurer must defend the entire claim. *Id.*"

## II.    ARGUMENT

It is clear beyond peradventure that in order to disclaim on this policy, the insurer had to insert into the Gorman Complaint, allegations which the Gorman Complaint itself did not have, i.e. that Mr. Gorman was an employee of Greendale. The Gorman Complaint identified Mr. Gorman's status vis-à-vis Greendale in no conclusory terms, alleging only in various paragraphs that Plaintiff "performed" certain manual labor for Greendale; that Greendale had "obtained" the services of the Plaintiff; and words of similar import. See Paragraph 28 of Plaintiff's Motion herein describing the specifics of each paragraph of the Gorman Complaint.

Paragraph 24 alleges only the "hiring" of Mr. Gorman but does not further allege that the hiring was as an employee or as an independent contractor.

As the insurer clearly established from its statement taken from Mr. Arters (Exhibit "E" herein), Mr. Arters specifically denied that Mr. Gorman was hired as an employee. On the contrary, Mr. Gorman presented to Mr. Arters a business card identifying himself as "Gorman

2

General Contract, Inc." Mr. Gorman received no benefits, set his own hours, supplied his own hand tools and was not subject to Mr. Arters' supervision.

The insurer took no statement from Mr. Gorman, and therefore had only its own insured's word to take. Initially the insurer concluded "there are no coverage issues at this time" (see ACOA158 attached hereto as Exhibit "F"). It then began to look around for an excuse to disclaim. Its document ACOA159 concludes that "if it is found that the insured owed Claimant workers' compensation benefits, we may be able to assert workers' compensation sole remedy as a defense (Exhibit "F" herein). Similarly, in Defendant's Document ACOA162 it recited that if they could prove that defense, they "could be in a disclaimer situation and before we go forward, the ROR (Reservation of Rights) should be first."

Thereafter, Defendants thought better of disclaiming outright and at document ACOA167, thought better of issuing the disclaimer without some investigation, and thought they had better get a statement from the insured regarding the "control he has over the subject". (See Document ACOA167).

After having received that statement (Document ACOA172), in addition to Mr. Arters telling them that Mr. Gorman was an independent contractor, the insurer noted to itself that Gorman presented a business card "Gorman General Contracting" to Mr. Arters. In this Document, (ACOA172) the insurer concludes "there was no formal written contract and therefore we *are unable to argue statutory employer* so it then had to make up a different argument to disclaim on this case. That argument appeared in Document ACOA173: "I believe there is an argument to make that the insured had control over the work which the Claimant did and therefore he 'would be considered' an employee." Having ignored the contents of the Gorman Complaint, and having decided to discredit the statement given by their own insured, they then went ahead and manufactured the argument in which to disclaim and then sent it to

3

their lawyers for their imprimatur.  See Document ACOA173: "I am forwarding the statement to HO Legal to obtain their opinion regarding whether to disclaim or handle under ROR.  I believe we have enough to disclaim."  Subsequently at Document ACOA177 it is noted that permission was received from HO to disclaim on the basis that the Plaintiff "would have been considered an employee of the insured."

It is not noted who "would have" made this factual determination.  It certainly was not listed in the Gorman Complaint, and it was certainly not among the things which their own insured told them.  In order for the Defendant to come to the conclusion to disclaim, they had to ignore the facts in front of them (the Gorman Complaint and Mr. Arters' statement) and manufacture a different excuse.  This conjecture had not a single fact to support it.

In the case of <u>Stewart v. Uryc</u>, 352 $A^2$ 465 (Pa. Super. 1975) a minor plaintiff who slipped under his "employers" vehicle was permitted to sue defendant in tort because the facts demonstrated no employer/employee status.

Defendant there withheld no taxes; carried no W/C insurance; minor set his own hours; minor was free to do no work.

In holding that there was no employer/employee relationship, the court noted that in order for such a relationship to exist, it must compare favorably with the principles of master/servant, that there must be a contract of employment, and such a contract must include the assent of both parties.

Clearly at the time the insurer denied coverage in this case, it did not and could not have had sufficient factual info to justify that conclusion.  On the contrary, the info they had compelled the conclusion at the very least that coverage applied.

4

However, after Mr. Gorman's deposition, parts of which are quoted below, there can be no reasonable conclusion except that there cannot be a master/servant (and hence employer/employee) relationship.

Mr. Gorman testified in his deposition that there was no formal system of keeping hours, that he kept his own hours, that he would work after school functions and sometimes on Saturdays and Sundays. Mr. Arters would only show him *what* to do; he would never show him "how" to do it. Mr. Gorman decided what tools he would use and how the end result would be reached. He said that he always did things "my way" to get things done, but for aesthetic end result, things were done Mr. Arters' way. He testified that he was paid in cash or by check, that he got no benefits and that Mr. Arters would inspect his work only after the job was finished.

In addition, Mr. Gorman testified that he worked for others during the year 1999 in addition to Greendale. He used his own tools 60% of the time and Greendale's power tools about 40% of the time. Greendale requested Mr. Gorman to recommend other workers, but specifically not to be affiliated with Mr. Gorman. At the time when the insurer disclaimed, they had not had the benefit of Mr. Gorman's testimony, but even assuming that they had, it is clear that neither Greendale nor Mr. Arters exercised the degree of control over Mr. Gorman so as to constitute a principal agent, master/servant or employer-employee relationship. Mr. Gorman came and went as he pleased, no taxes were taken from his pay, he maintained the autonomy to decide how the particular end result would be achieved, keeping in mind when the end result was achieved, it should end up, for aesthetic purposes, to comply with Mr. Arters/Greendale's wishes.

It is clear from reviewing the insurer's documents that initially there was no problem with the coverage issue; that they tried but failed to claim that Mr. Arters was a statutory employer, (indeed saying they could not assert that defense). They then opted to conclude that someone in

5

the future would find that Plaintiff "would have been considered an employee of the insured." Interestingly, this defense was created only after Plaintiff's counsel made a demand of Eight Hundred and Fifty Thousand Dollars ($850,000). Clearly the insurer did not want to defend or indemnify this claim, and rather than take the Gorman Complaint at face value, and consider its insured's own statement, decided to completely disregard them for its own benefit and began a desperate attempt to look for another avenue to avoid its obligations.

Clearly, the contents of the Gorman Complaint coupled with the information which the insurer had from Mr. Arters, at the very least would compel one to conclude that the claim *potentially* fell within the coverage area. To undertake the course of action it did was in breach of the insuring agreement, not made in good faith and was undertaken to protect its own interest rather than that of its insured.

Consequently, the Plaintiff respectfully requests this court to grant its Petition for Partial Summary Judgment and to compel the insurer to enter its defense.

    Respectfully Submitted:

    **VAUGHAN, DUFFY & CONNORS, LLP**

By: _____
Francis X. Nolan, Esquire, I.D. No. 09237
Attorney for Plaintiff
102 Pickering Way, Suite 400
Exton, PA 19341
(610) 524-2100

Date: September 9, 2003