**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| LEE ARTERS T/A GREENDALE BUILDERS | : | CIVIL ACTION – LAW |
| | : | |
| Plaintiff(s), | : | |
| v. | : | NO. 02-CV-4388 |
| | : | |
| ZURICH AMERICAN INSURANCE CO. t/a, | : | |
| ZURICH NORTH AMERICA as successor in | : | |
| Interest to ASSURANCE CO. OF AMERICA | : | JURY OF TWELVE (12) |
| | : | DEMANDED |
| and | : | |
| | : | |
| ASSURANCE CO. OF AMERICA | : | |
| | : | |
| Defendant(s). | : | |

DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO
PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT
AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY
JUDGMENT OF DEFENDANT ZURICH AMERICAN INSURANCE CO.

I.    BACKGROUND

    A.    Procedural Background

This action has its genesis in a workplace injury sustained by Thomas Gorman while

operating a table saw at a residential construction site.  At the time of the accident in July, 1999,

Gorman was seventeen years old and a student at a regional Vo-Tech high school.  He was hired

by Lee Arters t/a Greendale Builders ("Arters") to assist with carpentry work on a house Arters

was building on behalf of REI Consulting, Ltd.

On June 20, 2001, Gorman instituted suit in the Court of Common Pleas of Delaware

County, Pennsylvania, against R.E.I. Consultants, Ltd., Greendale Builders, Inc. and Lee and

Sara Arters to recover for injuries sustained in the accident.  A copy of the underlying Complaint

is attached to Plaintiff's Motion as Exhibit "B."  Following institution of suit, Arters requested a

defense and indemnity with respect to the claims against him under an insurance policy issued to him by Assurance Company of America, Policy No. SCP 34746363 ("Policy"). A copy of the Policy is attached to Plaintiff's Motion as Exhibit "A." Assurance declined to provide a defense and disclaimed coverage on the basis that Gorman was Arters' employee and that specific employment-related exclusions contained in the Assurance Policy precluded coverage.

On July 2, 2002, Arters instituted the instant suit against Zurich American Insurance Co. t/a Zurich North America, as successor in interest to Assurance Co. of America, and Assurance Co. of America in the United States District Court for the Eastern District of Pennsylvania. Arters now moves for partial summary judgment limited to his contention that Assurance is obligated to provide a defense as to the claims asserted against him in the underlying action. For the reasons discussed below, Arters' motion for partial summary judgment should be denied.

B.    <u>Factual Background</u>

The Complaint filed by Gorman alleges that, at all material times, Arters was overseeing and supervising the construction of a residence located in Upper Providence Township, Delaware County, Pennsylvania. In the Spring of 1999, Arters approached Gorman for the purpose of having Gorman perform manual labor in connection with the construction. <u>Gorman</u> Complaint, ¶11. According to the underlying complaint, Arters knew that Gorman was a minor and a high school student at the time he hired him to perform "dangerous carpentry services" at the site.

On July 29, 1999, Gorman was using a table saw provided by Arters when the saw blade cut through Gorman's left hand and middle finger, causing him injury. <u>Gorman</u> Complaint, ¶20. Gorman asserts that his injuries resulted from the carelessness, recklessness and negligence of Arters in the following respects:

a)  Hiring minors to operate dangerous and defective power tools and/or machinery;

b)  Permitting minor Plaintiff to operate dangerous machinery without appropriate supervision or training;

c)  Allowing the minor Plaintiff to use power tools and machinery which lacked appropriate safety devices;

d)  Failure to properly supervise the minor Plaintiff when the Plaintiff was performing dangerous tasks which required expertise;

e)  Failure to provide the Plaintiff with adequate, safe and appropriate power tools and machinery;

f)  Violation of Federal, State and Local laws, rules and regulations governing the employment of minors;

g)  Violation of applicable Federal, State and Local Statutes, laws and regulations governing the use and/or employment of minors when utilizing dangerous power tools and machinery;

h)  Failure to obtain permission of the minor Plaintiff's parents prior to allowing the Plaintiff to use dangerous power tools and machinery;

i)  Failure to warn the Plaintiff of the dangers of using power tools and machinery;

j)  Failure to warn the minor Plaintiff of using power tools and machinery without appropriate safety devices and guards being attached to said machinery;

k)  Failure to adequately instruct the minor Plaintiff in the operation of power tools and dangerous machinery;

l)  Failure to properly investigate the qualifications, training and instructions received by the minor Plaintiff prior to allowing the Plaintiff to perform dangerous carpentry work with power tools and machinery.

Gorman Complaint, ¶33.

        The underlying complaint further asserts that Arters provided the power tools to be used

on the job, including the table saw operated by Gorman at the time of the accident, and that

Gorman and other high school students working at the site were paid at an hourly rate for their work.  Gorman Complaint, ¶¶14 and 15.

II.     DISCUSSION

In his motion, Arters correctly points out that, under Pennsylvania law, an insurer's duty to provide a defense is determined by comparing the allegations of the underlying complaint to the coverage afforded by the policy.  D'Auria v. Zurich Ins. Co., 352 Pa. Super. 231, 507 A.2d 857 (1986).  If the facts alleged in the underlying complaint indicate that there can be no coverage, an insurer has no obligation to defend.  Gene's Restaurant v. Nationwide Ins. Co., 519 Pa. 306, 548 A.2d 246 (1988).  It is the factual allegations of the complaint that control, not the characterization of those facts or the theories of liability asserted.  See Pacific Indemnity Co. v. Linn, 766 F.2d 754 (3d Cir. 1985).  A comparison of the allegations of the underlying complaint to the coverage afforded under the Assurance policy demonstrates that the employment-related exclusions of the policy apply and that there can be no coverage for the claims asserted against Arters.

For the period encompassing the date of the accident, Arters was insured under a policy of insurance issued by Assurance Company of America which provides coverage for, inter alia, bodily injury and property damage liability in accordance with the following insuring agreement:

### COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY

**1.     Insuring Agreement.**

a.      We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . . .

<u>See</u> Exhibit "A" to Plaintiff's Motion for Partial Summary Judgment.

The policy further provides that the insurance does not apply to:

**d.    Workers Compensation and Similar Laws**

Any obligation of the insured under a workers' compensation, disability benefits or unemployment compensation law or any similar law.

**e.    Employer's Liability**

"Bodily injury" to:

(1) An "employee" of the insured arising out of and in the course of:

(a) Employment by the insured; or

(b) Performing duties related to the conduct of the insured's business;

\*        \*        \*

This exclusion applies:

(1) Whether the insured may be liable as an employer or in any other capacity; and

(2) To any obligation to share damages with or repay someone else who must pay damages because of the injury.

This exclusion does not apply to liability assumed by the insured under an "insured contract".

In Section V – Definitions, the policy defines the term "employee" as follows:

6. "Employee" includes a "leased worker". "Employee" does not include a "temporary worker".

The terms "leased worker" and "temporary worker" are defined in Section V as follows:

10. "Leased worker" means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business. "Leased worker" does not include "temporary worker".

\*        \*        \*

20.  "Temporary worker" means a person who is furnished to you to substitute for a permanent "employee" on leave or to meet seasonal or short-term workload conditions.[1]

Thus, under the terms of the Assurance policy, coverage does not apply if Gorman was an employee at the time of the accident. In his motion for partial summary judgment, Arters takes the position that the exclusion quoted above is inapplicable because the underlying complaint does not specifically allege that Gorman was an employee.  The underlying complaint, however, taken as a whole, demonstrates that an employer-employee relationship existed and that Gorman's claim falls within the scope of the exclusion.

There is no formula for determining whether an employer-employee relationship exists; each case must be evaluated based upon a number of different factors.  Jay Lines, Inc. v. Workmen's Compensation Appeal Bd., 66 Pa. Cmwlth. 299, 443 A.2d 1370 (1982).  One court has described those factors as follows:

> The courts have not formulated a hard and fast definition for the determination of whether any given relationship is one of independent contractor or that of employer-employee.  They have, however, set forth indicia of such relationship to be used as guides in making such a determination. Some of which are:  Control of manner work is to be done; responsibility for result only; terms of agreement between the parties; the nature of the work or occupation; skill required for performance; whether one employed is engaged in a distinct occupation or business; which party supplies the tools; whether payment is by the time or by the job; whether work is part of a regular business of the employer, and also the right of employer to terminate the employment at any time . . .  These indicia are not to be considered as circumstantial in nature and whether some or all of them exist in any given situation

---

[1] Although Arters has, on occasion, taken the position that Gorman was a "temporary employee" at the time of the accident, he does not press that contention on this motion.  Further, there is no evidence – in the underlying complaint or in subsequent discovery – that Gorman was "furnished to" Arters, as required by the policy definition of a temporary worker.  Accordingly, the "temporary worker" exception does not apply here.  Nationwide Mut. Ins. Co. v. Allen, 2003 Conn. Super. LEXIS 1040 (Conn. Super. Ct. April 17, 2003).

is not absolutely controlling as to the outcome; each case must be
determined on its own facts.

Genie Trucking Line, Inc. v. American Home Assurance Company, 362 Pa. Super. 456, 524

A.2d 966 (1987), appeal denied, 515 Pa. 622, 531 A.2d 430 (1987), quoting J. Miller Co. v.

Mixter, 2 Pa. Cmwlth. 229, 232, 277 A.2d 867, 869 (1971).  These indicia are not to be

considered as circumstantial in nature and whether some or all of them exist in any given

situation is not absolutely controlling as to the outcome; each case must be determined on its

own facts.  J. Miller Co. v. Mixter, 277 A.2d at 869.  The crucial test is whether the alleged

employer assumes control of the work to be done and the manner in which it is to be performed.

The entity possessing the right to control the manner of performance of the servant's work is the

employer, irrespective of whether the control is actually exercised.  Khan v. Accurate Mold, Inc.,

82 F. Supp. 2d 381 (E.D. Pa. 2000).

        The indicia of an employment relationship identified by the court in Genie Trucking are

reflected in the allegations of the underlying complaint.  Gorman specifically alleged that Arters

supplied the power tools used on the job, including the table saw on which Gorman was injured.

Gorman was paid on an hourly basis, rather than by the job.  More importantly, however, the

nature of the conduct on which Gorman's complaint rests is entirely inconsistent with a

relationship of employer-independent contractor.  Gorman asserts that Arters failed to train him

on the tools and machinery necessary to perform the work, failed to supervise him while he was

performing dangerous tasks, failed to obtain the permission of Gorman's parents before allowing

him to use dangerous machinery, failed to warn Gorman of the dangers involved in using power

tools without safety devices and failed to instruct Gorman in the operation of power tools.  The

duties Gorman seeks to impose upon Arters are inconsistent with employment of an independent

contractor, who is expected to be skilled in his chosen field.  Allegations that Gorman was a

minor and a student at the time he was hired by Arters and that Arters was aware of Gorman's youth serve only to buttress the conclusion that Gorman was not an independent contractor, engaged in a distinct occupation or business.

Arters relies on Stewart v. Uryc, 237 Pa. Super. 258, 352 A.2d 465 (Pa. Super. 1975), to support his contention that Gorman was not an employee at the time of the accident. The Stewart decision is, however, inapposite.

In Stewart, the court described the relationship between the defendant and the minor plaintiff and the accident that gave rise to the suit as follows:

> The basic facts are not in dispute. Appellee, as part of his private sanitation business, contracts with firms to pick up and empty trash containers. In the summer of 1966, minor plaintiff began to accompany appellee two or three times a week on various jobs. When appellee's truck approaches a container, both he and the minor plaintiff would get out of the truck to "size up the container." Minor plaintiff would then stand on the truck's running board while appellee operated the vehicle. His job was to step off the truck, and tell appellee when to stop, so that appellee could "line up" the truck's platform with the container. On May 26, 1967, as minor plaintiff stepped off the truck, he was pulled under by the wheels and sustained various injuries.

352 A.2d at 467.

Following the accident, the minor plaintiff filed suit in tort against the defendant, alleging that his injuries resulted from defendant's negligent operation of the truck. The defendant asserted that the minor could not maintain the tort action because, as an employee, his exclusive remedy was under the workers compensation statute.

The court observed that resolution of the case hinged strictly on whether the minor plaintiff was defendant's employee. The court concluded that no employment relationship existed under the circumstances. It did not, however, find that the minor was an independent

contractor as Arters urges in this case; rather, it found that the minor was a volunteer, i.e., he did not perform services for a valuable consideration.

The facts on which the court based its decision were described as follows:

> Appellee testified that minor plaintiff had no fixed salary, but "[I]f I had a couple of bucks, I would give it to him," and that there were many occasions when minor plaintiff worked for no compensation at all.  The following excerpt of minor plaintiff is instructive:

> Q.  When did you make arrangements with Mr. Uryc [when] you wanted to go for a ride?

> A.  The day before.

> Q.  How come you tell him the day before you wanted to go out with him on May 26, 1967?  What caused you to do that?

> A.  Well, I usually just ask him to go if I didn't have anything else to do. . . .

> Q.  What did you get out of it, if anything, besides the pleasure of going riding with him?

> A.  Money.  He gave me a couple of bucks for helping.

> Q.  Was there any specific understanding about paying you any specific amount?

> A.  No.

> Q.  If he didn't pay you anything it was all right?

> A.  Yes.

> Q.  And whatever he paid you it was all right?

> A.  Yes. . . .

352 A.2d 469-70.

By contrast, there is no suggestion that Gorman performed work for Arters without consideration or for sporadic remuneration at Arters' discretion.  In fact, the underlying

complaint alleges that Gorman performed carpentry work in exchange for an hourly wage.  Thus, the determining factor relied on by the court in <u>Stewart</u> to support its conclusions is lacking in this case and <u>Stewart</u> does not provide a basis for judgment in favor of Arters with respect to the defense issue.

It should be noted that discovery taken in this matter has born out Assurance's conclusion that Gorman was an employee at the time of the accident.  As noted above, there are a number of factors a court may consider in determining whether an employer-employee relationship exists. The key factor is the employer's right to control the manner in which the work is performed, regardless of whether that control is, in fact, exercised.  <u>Khan v. Accurate Mold, Inc.</u>, 82 F. Supp 2d 381 (E.D. Pa. 2000).  At deposition, Gorman testified to Arters right to control the manner in which work was to be performed as follows:

> Q.    Now, you described in general what you were doing for Mr. Arters.  Now is it a fair statement that Mr. Arters would tell you what needed to be done and then you would go ahead and do it?
>
> A.    Yeah.  He would, you know, tell me – he would assist me on how things would be done when I wasn't a hundred percent knowledgeable.  I wasn't a master carpenter to do everything on my own.  He would tell me to use this tool to do this and everything like that.  He would give me the tools, you would need this tool today and this tool.
>
> Q.    And in order to get the job done the way that Mr. Arters wanted it done, who decided how it had to be done?
>
> A.    How it had to be done, he told me what needed to be done.  He would be there with me, you know, show me what needed to be done.  He would give me the tools and just basically common practice on how things would be done.
>
> Q.    Did you determine how it was to be done after he told you what was to be done?
>
> A.    No.  He would – he would tell me to use certain tools to get things done.

Q.      But I mean after you had the, so to speak, had the tools in your hand, who decided how you were going to accomplish the particular task?

A.      Well, there's only certain tools you can use on certain tasks.

                        *        *        *

Q.      After Mr. Arters told you what had to be done and then you were using certain tools, was it you who decided how you were going to use the tool in order to reach the end result that you desired.

A.      Yeah.

Q.      So you used your skill that you learned in order to accomplish what was to be done.

A.      Yeah.

Q.      Mr. Arters didn't tell you how to do that?

A.      He would tell me what tools to use, and I would just use the tools the best way I knew how.

                        *        *        *

Q.      If Mr. Arters had told you to use a push stick, would you have used one?

A.      Yes.

                        *        *        *

Q.      Did Mr. Arters tell you to wear safety glasses?

A.      No.

Q.      If he told you to wear them, would you have worn them?

A.      Yes.

                        *        *        *

Q.      What would you have done if Mr. Arters had told you not to use the table saw without him being present?

A.      I would not have used it.

Q.    . . . [I]f he asked you to use a dust mask, would you have worn one?

A.    Yes.

Q.    What would you have done if Mr. Arters, for instance, told you to use screws for a certain project as opposed to nails?

A.    Would I have used them?

Q.    Yes.

A.    Yes.

*        *        *

Q.    And if you were installing trim, if he told you to install it with butt joints as opposed to miter joints, would you have followed his direction?

A.    Yes.

Deposition of Thomas Gorman at 18-20; 97-99.[2]

This testimony confirms that the essential relationship of employer-employee existed at the time of the accident and brings the claims against Arters squarely within the exclusion of the Assurance policy.

Arters' Memorandum of Law devotes little attention to the allegations of the underlying complaint and the indicia of employment reflected in that complaint and subsequent discovery. Instead, much of the Memorandum consists of a rambling discourse on perceived wrongs allegedly committed by Assurance in the course of its evaluation of coverage.  However aggrieved Arters may feel, his unsubstantiated accusations of allegedly wrongful conduct, which accusations are vehemently denied by Assurance, are not relevant to the question at hand, i.e.,

---

[2] Excerpts from the deposition of Thomas Gorman are attached as Exhibit "A".

whether Gorman was Arters' employee at the time of the accident, and cannot be considered in resolving the dispute before the court.

III.    CROSS-MOTION FOR SUMMARY JUDGMENT AS TO ZURICH

As noted above, Arters has named "Zurich American Insurance Co. t/a Zurich North America as successor in interest to Assurance Co. of America" as a defendant in this action.  In his motion for partial summary judgment, Arters admits that the policy under which he seeks a defense was issued by Assurance Company of America.  Assurance admits that it provided coverage to Arters, subject to the provisions contained in the policy.  Assurance has advised Arters' counsel on more than one occasion that neither Zurich American Insurance Co. nor Zurich North America issued a policy of insurance to Arters.

Arters' motion is directed exclusively to Assurance Company of America.  No separate relief is sought against the other entities named as defendants and no facts have been proffered to justify their continued inclusion as defendants.  Under the circumstances, defendants respectfully request that an Order be entered granting judgment in favor of the Zurich entities and dismissing from this litigation.

IV.    CONCLUSION

Rule 56 of the Federal Rules of Civil Procedure permits entry of judgment, without trial, if the moving party demonstrates that there are no material facts in issue and that the movant is entitled to judgment as a matter of law.  Arters is not entitled to summary judgment under this standard.  Rather, a comparison of the allegations of the underlying complaint to the coverage afforded under the Assurance policy demonstrates that judgment lies in favor of Assurance as a matter of law.

If a court determines on motion for summary judgment that no material factual issue exists, it is authorized to deny summary judgment to the moving party and enter judgment in favor of the nonmovant.  See Yacavone v. Bailar, 455 F. Supp. 287 (D.C. Cir. 1978).  Although it is Defendants' intention to file a separate motion for summary judgment, addressing all claims asserted against them, including plaintiff's claim that Defendants are obligated to indemnify him against any liability he may incur in the underlying action, Defendants respectfully request that this Court exercise that authority and that an Order be entered denying plaintiff's Motion for Partial Summary Judgment and granting Summary Judgment in favor of defendants. Alternatively, at a minimum, material facts exist regarding the relationship between Thomas Gorman and Lee Arters, precluding a finding that, as a matter of law, Assurance is required to provide a defense to the claims asserted against Arters.  Accordingly, Arters' motion for partial summary judgment should be denied.


                              Respectfully submitted,

                              HECKER BROWN SHERRY AND JOHNSON LLP


                              BY:_____
                                      Carl H. Delacato, Jr.
                                      Attorneys for Defendant,
                                      Assurance Co. of America

Dated:  October 31, 2003


125104-1                                14

## CERTIFICATE OF SERVICE

Carl H. Delacato, Jr., Esquire, hereby certifies that on this 31st day of October 2003, he caused a true and correct copy of Defendants' Answer to Plaintiffs' Motion for Partial Summary Judgment Sur Declaratory Judgment Action and Cross Motion for Summary Judgment and Defendants' Memorandum of Law in Support Thereof to be served on the counsel listed below via first class United States mail, postage prepaid and properly franked as follows:

Francis X. Nolan, Esquire
VAUGHAN DUFFY & CONNORS, LLP
102 Pickering Way, Suite 400
Exton, PA 19341

Frank J. Marcone, Esquire
ATTORNEY AT LAW
127 Chester Pike
Ridley Park, PA 19078

Phillip A. Charamella, Esquire
LAW OFFICES OF MICHAEL D. FIORETTI
The Bourse Building
111 South Independence Mall East
Suite 790
Philadelphia, PA 19106-2323

_____
Carl H. Delacato, Jr.

125104-1